UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| HITACHI MEDICAL SYSTEMS AMERICA, INC., | ) ) ) | CASE NO. 5:11CV446 |
| PLAINTIFF, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) | **MEMORANDUM OPINION** |
| EMPIRE IMAGING, P.C., | ) ) ) | **AND ORDER** |
| DEFENDANT. | ) ) | |


Before the Court is the modified motion for attorney's fees and costs (Doc. No.

89) filed by plaintiff ("HMSA" or "plaintiff"), submitted pursuant to this Court's Memorandum

Opinion and Order of November 14, 2013. Defendant has opposed the motion. (Doc. No. 90.)

For the reasons set forth below, in recognition of plaintiff's contractual right to

recover some "reasonable" attorney's fees and costs, plaintiff's motion is **GRANTED** in part.

Despite plaintiff's failure to comply with the Court's order to modify its fee application, the

Court, having conducted its own analysis of the "modified" application, awards a total of

$46,645.36 in attorney's fees and costs, as set forth below.

## I. BACKGROUND[1]

Under the terms of a written agreement executed in February 2008 ("the 2008

Agreement"), which superseded an earlier agreement that was never carried out, Empire

Imaging, P.C. ("Empire" or "defendant") purchased an Echelon™ 1.5T High Field MRI System

---

[1] This background section is based upon the Court's findings of fact and conclusions of law entered after a bench trial conducted on June 4-5, 2012. *See* Doc. No. 69.

("the MRI") from HMSA. (Findings of Fact ["FF"] 12, 26.) Contemporaneously with the 2008

Agreement, Empire and HMSA executed a Service Maintenance Agreement ("the 2008 SMA")

by which Empire agreed to pay HMSA $120,000.00 per year, plus tax, over a five (5) year

period beginning upon the expiration of the warranty, to perform service and maintenance on the

MRI. (FF 33.)

Following the expiration of the contractual warranty period, payments under the

2008 SMA were to be invoiced monthly and paid in advance. (FF 34.) Among the "terms and

conditions" found on the reverse of both pages 1 and 2 of the 2008 SMA was the following

paragraph:

5. CHARGES

Charges are payable in advance upon receipt of invoice. If Purchaser requests unscheduled, on call maintenance service other than during HMSA's normal working hours or the coverage selected on this Service Agreement, such service will be furnished at HMSA's hourly rates in effect at the time service is performed.

Purchaser shall pay HMSA, upon receipt of invoice, all travel and other expenses incurred by HMSA for service performed at Purchaser's request outside of the coverage selected in this Agreement.

Invoices not paid within ten (10) days of the invoice date will have a 1.5 percent per month interest charge, or the highest lawful rate, whichever is less, assessed against the unpaid balance from the date of the invoice until the date of payment. *Purchaser shall pay all costs involved in HMSA's collecting its overdue accounts from Purchaser including reasonable attorney's fees.*

All invoicing procedures are subject to change by HMSA at any time following the expiration of the Initial Term upon a minimum of sixty (60) days prior written notice.

(FF 40, emphasis added.)

Beginning on April 15, 2010, HMSA issued an invoice to Empire each month

under the 2008 SMA. Each invoice included only the $10,000.00 charge for service, plus

$887.50 in sales tax, for a total of $10,887.50. (FF 46.) Empire did not pay the initial invoices

issued by HMSA under the 2008 SMA because it believed the MRI was still under warranty

pursuant to its understanding of the terms of the 2008 Agreement. (FF 47.) As a result of

Empire's non-payment, HMSA placed the MRI on service hold and refused to perform service

under the 2008 SMA until Empire remitted payment to HMSA. (FF 48.) In order to restore

service, on November 30, 2010, Empire reluctantly paid several past due invoices. Empire then

continued to pay the invoices, but only once on the actual due date. In turn, [HMSA] continued

to accept all of Empire's payments. (FF 50.)

HMSA filed this lawsuit against Empire on March 4, 2011. In its complaint,

HMSA alleged that Empire had "failed to pay as agreed in the SMA." (Compl. ¶ 12.) It claimed

it was entitled to recover an amount in excess of $545,325.00, plus interest, costs, and attorneys'

fees, pursuant to the terms of the 2008 SMA. (Compl. ¶ 14.) At the time the complaint was filed,

however, there were only five past due invoices on Empire's account under the 2008 SMA. As of

the time of trial, none of the invoices that were past due when the complaint was filed were still

outstanding. Rather, there was only one seven-days-past-due invoice under the 2008 SMA, for a

total delinquent balance of $10,887.50. (FF 53.)

HMSA sought to recover a six-figure damages award based on its construction of

the 2008 SMA as containing an "acceleration" clause permitting it to demand the full unpaid

balance on the five-year contract upon a single failure by Empire to timely pay a monthly

invoice. (*See* FF 36.) It did so even though, despite Empire's repeated failure to pay its monthly

invoices on time, HMSA had continued to accept the late payments *and* had never invoiced

Empire for any "accelerated" amount. (FF 49, 50; Conclusions of Law ["CL"] 7, 9, 10.)

Somewhat complicating matters in the case, Empire counterclaimed against

HMSA, asserting that HMSA had not honored the full warranty period under the 2008

3

Agreement and had, therefore, begun invoicing Empire under the 2008 SMA nineteen (19)

months too soon. (FF 52. 54.) Notably, although Empire counterclaimed under the 2008

Agreement, HMSA had sued only under the 2008 SMA. (Doc. No. 69, n.1.) Under the narrow

terms of that contract, HMSA was entitled to recover reasonable attorney's fees in any action

brought to "collect[ ] its overdue accounts from [Empire.]" (CL 30.)

> Following a bench trial, this Court entered judgment as follows:

> For the reasons set forth in the contemporaneously filed Findings of Fact and Conclusions of Law, plaintiff Hitachi Medical Systems America, Inc. is awarded judgment against defendant Empire Imaging, P.C., d/b/a Empire Imaging, as follows: (1) compensatory damages in the amount of $10,875.00, plus interest as due under the 2008 Service Maintenance Agreement, and (2) reasonable attorney's fees. Further, the Court declares that plaintiff Hitachi Medical Systems America, Inc. is entitled to continued monthly payments by defendant Empire Imaging, P.C., d/b/a Empiring Imaging, pursuant to the 2008 Service Maintenance Agreement. Case dismissed.

(Doc. No. 70.)[2]

On April 9, 2013, plaintiff filed its original motion for fees and costs seeking

$160,602.50 for attorney's fees and 47,650.77 in costs. (Doc. No. 74.) After briefing, on

November 14, 2013, this Court issued a ruling on that motion, determining that, "although

plaintiff is entitled under the 2008 SMA to recover some reasonable amount of fees and costs,"

(Doc. No. 88 at 1647), the "request for attorney's fees and costs to cover the *full* amount of its

litigation expenses is unreasonable." (*Id*. at 1645.) The Court noted that "the 2008 SMA does not

contemplate payment of HMSA's attorney's fees for full-blown litigation relating to a disputed

contract provision." (*Id*. at 1646.) This was "especially true in light of the fact that HMSA

persisted in going to trial on a damages theory based upon an acceleration/liquidation clause that

---

[2] Plaintiff subsequently filed its Notice of Appeal. (Doc. No. 77.) However, on June 28, 2013, the Sixth Circuit dismissed the appeal on plaintiff/appellant's motion.  (Doc. No. 83.)

the Court found unenforceable." (*Id.*) Rather, the Court determined that plaintiff "is entitled to recover only those costs, including attorney's fees, involved in 'collecting its overdue accounts' from Empire." (*Id.* at 1645). "The only 'account' that was overdue at the time of the commencement of this action related to five past due invoices; by the time of trial, there was only one past due invoice." (*Id.*)

"[U]nwilling to select an arbitrary amount that would be reasonable under the circumstances, . . . [and also] unwilling to sort through the lengthy documentation submitted in support of HMSA's fee petition to independently determine an amount to award[,]" (Doc. No. 88 at 1647), the Court granted plaintiff leave "to submit a modified fee petition consistent with [Doc. No. 88]." (*Id.* at 1647.)

## II. DISCUSSION

### A.     Plaintiff's Modified Fee Petition

Plaintiff has submitted its modified fee petition; however, it takes but cursory review to reveal that it is anything but consistent with the Court's previous order. Rather, plaintiff essentially (re)argues the merits of its case and this Court's prior rulings in an apparent attempt to improperly place new arguments in the record, whether or not those arguments were properly and/or timely made to this Court in the *first* instance. Further, HMSA submits 57 pages of billing records, with no indication of how, or whether, those records reflect any legal work performed with respect to collecting its overdue accounts from Empire. In fact, HMSA requests the *exact amount* of attorney's fees ($160,602.50) and costs ($7,650.77) that this Court previously rejected as unreasonable.

5

The Court could go on at length about the inadequacy of plaintiff's modified submission. However, Empire, in its very brief opposition, adequately sums up the Court's own sentiments:

> How should [Empire] respond to this submission? It would be possible to go through the 57 pages of billing records with great care (and at considerable expense to Empire) to try to parse out what portion of the fees described therein relate to the counterclaim filed by Empire (which the Court has ruled are not compensable) and what portion of the fees relate to the failed attempt to accelerate the entire service agreement amount (which the Court has also ruled are not compensable).
>
> But such an effort would then ultimately require this Court to make the same sort of detailed review of lengthy documentation–which this Court has already refused to do, and which this Court specifically directed HMSA to do, *itself*, as part of its modified fee request. HMSA has, simply, not done the required review and revision in it Modified Petition.

(Doc. No. 90 at 1741-42.)

That said, in its Findings of Fact and Conclusion of Law issued on March 26, 2013, this Court acknowledged that, under the terms of the 2008 SMA, HMSA is entitled to recover "reasonable attorney's fees" related to collection of unpaid accounts. (Doc. No. 69 at 911, ¶¶ 28, 30.) This remains true and, despite plaintiff's failure to comply with this Court's directive to submit a properly modified fee petition to assist the Court, the Court still has an obligation to determine a reasonable award.

Although plaintiff has failed to assure the Court of the reasonableness of its request and has simply resolutely reasserted the same amount that this Court has already rejected, the Court has nonetheless "sort[ed] through the lengthy documentation submitted in support of HMSA's [modified] fee petition to independently determine an amount to award." (Doc. No. 88 at 1647.)

Before turning to that analysis, however, the Court will briefly address some of the new arguments raised by plaintiff in its modified petition, arguments which challenge the propriety of this Court's decision relating to the original fee petition.[3]

Plaintiff argues now that the Court erred in determining that "HMSA is not entitled to recover its fees incurred to defend against [d]efendant's [c]ounterclaim or in pursuing recovery under the liquidated damages/acceleration provision." (Doc. No. 89 at 1651-52, citing Doc. No. 88 at 1645-46.) Plaintiff asserts that "[w]hen claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced." (*Id.*, quoting *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1169 (6th Cir. 1996); *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005); *Edlong Corp. v. Nadathur*, 2013-Ohio-1283, ¶ 17 (1st Dist.).[4] The Court finds each of the cited cases distinguishable.

*Thurman* was a case brought under Title VII for race discrimination in employment. The employee prevailed and, under the terms of the relevant statute, recovered attorney's fees, although the trial court reduced the requested fees by 5% because plaintiff had

---

[3] The Court notes that the original fee petition, which was only four pages in length, not counting the billing records, contained very little by way of legal argument. It certainly contained nothing that would have supported an award of the entire amount of fees sought at that time (and still). Although a party would not be expected to predict the full legal analysis that a court might employ in denying a fee petition, the party certainly can be fairly expected to set forth in its original petition the legal arguments supporting the *amount* of fees sought. It is simply not proper procedure to wait for the court's ruling and then attack its legal analysis. This is truly the proverbial "second bite" of the apple. Even so, although the Court believes these arguments were waived by not being properly raised in the original fee petition, the Court also feels constrained to address at least some of plaintiff's new arguments. By addressing *some* of those arguments, and not all, the Court does not intend to suggest that any unaddressed new arguments are accepted as correct.

[4] Plaintiff also cites *Nordquist v. Schwartz*, 2012-Ohio-4571, ¶ 26 (7th Dist.) for the proposition that "surgically allocating fees and expenses on a claim-by-claim basis [is] not possible or necessary." (Doc. No. 89 at 1652.) However, the Court fails to see how this can be helpful to the analysis, since even the state court of appeals was unable to adequately review the trial court's ruling because "the trial transcript was not filed in [the] appeal[.]" *Id.* ¶ 2. As a result, the court could only conclude that "[a]s the record is incomplete, we cannot measure whether the trial court abused its discretion in making [its] determination." *Id.* ¶ 12. Instead it applied a presumption that the trial court was correct in its determination that the claims and defenses were so closely intertwined that separating the attorney fees on a claim-by-claim basis was not possible. *Id.*

not been entirely successful. The employer challenged the award on appeal, arguing that it should have been reduced by at least 40%. The Sixth Circuit noted:

> "Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."

*Thurman*, 90 F.3d at 1169 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)).

Likewise, *Barnes* was a civil rights action alleging sex discrimination under Title VII. The Sixth Circuit, finding a "common cores of facts," concluded that the district court had not abused its discretion by failing to reduce the prevailing plaintiff's attorney's fees for time expended on non-prevailing causes of action.

Both *Thurman* and *Barnes* are distinguishable from the instant case. Their attorney's fee awards were made pursuant to statute (as was also the case in *Hensley*). They involved multiple, related civil-rights-based claims for which full fees were granted to the prevailing parties even though they were only partially successful. In the instant case, as in most cases under the "American rule," absent an express statute allowing fees, the only reason plaintiff was deemed entitled to fees *at all* was because of a contract provision stating that it could recover fees related to "collecting its overdue accounts[.]" As noted in this Court's original opinion on the matter, the contract did not provide for fees for litigation covering general disputes relating to contract construction, including counterclaims on such issues.

Plaintiff also cites *Edlong Corp.*, *supra*, for the proposition that "a trial court abuses its discretion to award attorney fees if it arbitrarily excises a portion of attorney fees in the face of uncontroverted evidence that the attorney fees are indivisible because the claims involved were so intrinsically intertwined." (Doc. No. 89 at 1652.) In *Edlong Corp.*, plaintiff unsuccessfully sued a former employee (and his new employer) for breach of a confidentiality clause in his employment contract and for trade secret violations. The employee unsuccessfully counterclaimed for tortious interference with a business relationship. The prevailing employee sought attorney's fees, relying upon a provision in the confidentiality agreement providing that "[t]he prevailing party in any action to enforce this Agreement shall be entitled to recover reasonable attorney fees, in addition to other available relief." *Edlong Corp.*, 2013-Ohio-1283, ¶ 14.) The trial court awarded half of the fees requested, apparently discounting for the defense of the trade secret claim. On appeal, the court of appeals reversed, concluding that the trade secret claim was too intertwined with the breach of contract claim to be extracted for purposes of an attorney fee award under the contract. Admittedly, at first blush, this case might give one pause. However, this Court concludes that the contract provision in *Edlong Corp.* was simply *much* broader than the contract provision here. More importantly, however, in *Edlong Corp.*, the prevailing employee had to *defend* against two separate, intertwined claims brought by his employer, one of which contractually entitled him to attorney fees if he prevailed. Here, plaintiff brought an action to recover amounts owed under a contract that provided for an award of fees related to "collecting its overdue accounts[.]" (Doc. No. 1-1 at 6, ¶ 5.) Plaintiff prevailed and will be permitted to recover its reasonable fees. However, those fees should not be increased merely because the defendant also counterclaimed and, arguably, expanded the litigation and, therefore,

9

the costs to plaintiff. There, the American rule applies. As pointed out in this Court's

Memorandum Opinion and Order of November 14, 2013:

> It is highly doubtful that, had [defendant] sued [plaintiff] in the first instance, seeking a declaratory judgment with respect to the 2008 SMA, and had [plaintiff] prevailed in that suit, it would have been entitled to recover its attorney fees under ¶ 5 of the 2008 SMA. The Court sees no reason why there should be a different result merely because [defendant] countersued in a lawsuit originally brought by [plaintiff].

(Doc. No. 88 at 1646, n.8.)

The Court now turns to the task of determining a "reasonable" award of fees and

costs.

**B.     The Award**

Federal courts calculate awards of attorney fees using the lodestar method, which

consists of "the number of hours reasonably expended on the litigation multiplied by a

reasonable hourly rate." *Hensley*, 461 U.S. at 433. "An award based on the total number of hours

reasonably expended on the litigation might, however, result in an excessive amount if the

claimant has achieved only partial success." *Id.* at 435. In that case, "the award may be adjusted

as necessary to achieve a reasonable result." *Dowling v. Litton Loan Servicing, LLP*, 320 F.

App'x 442, 446 (6th Cir. 2009). "[T]he district court should focus on the significance of the

overall relief obtained by the plaintiff in relation to the hours reasonably expended on the

litigation." *Hensley*, 461 U.S. at 435.

"[T]he lodestar looks to 'the prevailing market rates in the relevant community.'"

*Perdue v. Kenny A.*, 559 U.S. 542, 551, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010) (quoting *Blum

v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)). The "prevailing market

rate" is "that rate which lawyers of comparable skill and experience can reasonably expect to

command within the venue of the court of record." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013) (citation omitted).

To determine the reasonable number of hours, the Court has sifted through the undifferentiated billing records provided, attempting to isolate those hours that could rightfully be attributed to "collecting [plaintiff's] overdue accounts" from defendant.[5] This was an exercise in futility,[6] leaving the Court to conclude that the best it can do is isolate the hours of work performed by Attorney John B. Schomer, identified as "lead counsel" for plaintiff,[7] who is the only attorney or legal professional who submitted an affidavit in support of the fee petition. This, too, was not fool-proof, as the items listed in all the billing records are identified solely by initials.[8] The Court believes that "JBS" in the billing records refers to Mr. Schomer, but there is actually nothing to confirm that.

---

[5] Recognizing the difficulty in determining fees in this particular case, shortly after entering judgment, the Court conducted a conference wherein it encouraged counsel to "work together with each other and their respective clients to resolve this issue [attorney's fees and costs] without judicial intervention, if possible." (Minutes of Proceedings, 4/2/13.) Obviously, that did not occur, since plaintiff filed its original fee petition shortly thereafter. Plaintiff also filed a notice of appeal; however, on plaintiff's motion, the appeal was voluntarily dismissed by the Sixth Circuit. Following that dismissal, this Court again asked counsel to confer and to advise as to whether they would be amenable to mediating the issue of fees and costs. (*See* Doc. No. 84.) Counsel thereafter reported that defendant was not interested in doing so. (*See* Doc. No. 85.) Unfortunately, the parties thereby chose to forego the chance to mutually agree on an appropriate award of fees and costs.

[6] "Under Ohio law, a contractual right to attorneys' fees is generally 'enforceable and not void as against public policy so long as the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all the circumstances of the case.'" *Andersons, Inc. v. Lafarge N.A., Inc.*, 503 F. App'x 314, 322 (6th Cir. 2012) (quoting *Wilborn v. Bank One Corp.*, 121 Ohio St. 3d 546, 906 N.E.2d 396, 400 (2009)). Here, the Court cannot conclude that $160,602.50 in fees would be a "fair, just and reasonable" award for successfully recovering a past due account totaling $10,875. Plaintiff is entitled to recover some of its fees and costs, but this Court must exercise its best judgment in determining the proper amount, especially where, as here, plaintiff has supplied little assistance. *See Hensley*, 461 U.S. at 436 ("[t]here is no precise rule or formula" for determining "whether the expenditure of counsel's time was reasonable in relation to the success achieved"); *see also Ky. Rest. Concepts Inc. v. City of Louisville*, 117 F. App'x 415, 419 (6th Cir. 2004) (approving an across-the-board reduction, as opposed to excision of specific hours, based on partial success).

[7] The CMECF docketing system allows attorneys to identify themselves as "lead counsel" for purposes of receiving notices; however, the Court relies upon the designation of "lead counsel" contained in the Joint Report of Parties' Planning Meeting filed prior to the Case Management Conference. (*See* Doc. No. 19 at 90, ¶ 2.)

[8] According to the billing records, work has been performed in this case by JBS (at $195/hour); LAM ($175); SRW ($175); TJE ($150); JDW ($85); MRH ($150); JEO ($150); JAQ ($150); and KLG ($195). From the docket, the

As for the prevailing market rate, the Court has little to nothing to go on, given that the billing records contain only initials representing persons who did the work, without any description of whose initials they are, *and* given the fact that no one has submitted an affidavit or any other source material from which this Court might determine "comparable skill and experience." Mr. Schomer re-submitted the same affidavit he had submitted in support of the original fee petition. Although that affidavit sufficiently establishes Mr. Schomer's credentials,[9] it does nothing to establish the credentials of any of the other attorneys or legal professionals who are represented by the initials in the billing records.[10]

When all of these circumstances are combined, and coupled with plaintiff's counsel's own failure to provide the Court with any meaningful assistance, since the burden of establishing reasonableness of fees is on the party seeking the fees, the Court concludes that the only "fair" way to award fees to plaintiff is to account for the services of "JBS," whom the Court has presumed is lead counsel, Mr. John B. Schomer.

The records show that JBS performed 208.9 hours of service at $195 per hour, for a total fee of $40,735.50. Certainly a little over 200 hours is a sufficient amount of time to devote to collection of a past-due account barely exceeding $10,000. Further, although a rate of $195 might be considered a little high for collections work, it is not completely out of line. Therefore, the Court concludes that this is an appropriate "lodestar" under the circumstances.

---

Court can guess that JBS is John B. Schomer, LAM is Leigh A. Maxa, and SRW is Stephan R. Wright. The Court has no idea to whom the remaining initials belong.

[9] The affidavit states that Mr. Schomer (1) is a shareholder and director in the law firm of Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A. ("KWGD") in Akron, Ohio; (2) was a Member of the law firm Brennan, Manna & Diamond, LLC in Akron, Ohio through June 30, 2011 and for eleven years prior; (3) was a commercial litigator and ultimately a Shareholder/Partner with the law firm of Buckingham, Doolittle & Burroughs, LLP; (4) has over twenty years of commercial litigation experience in Ohio and federal courts; and (5) is familiar with the attorney's fees typically awarded in commercial litigation matters. (Doc. No. 89-1.)

[10] This is yet another reason to limit the fees to work attributable to Mr. Schomer.

The Court has no way of judging the appropriateness of any other hours of work performed by any other legal professional whose initials are listed in the billing records. Even though the Court might be able to sort through the *hours* and the *services* performed, and even might be able to guess as to the identity of a couple of those legal professionals, there is simply no affidavit or anything else in the record from which to judge whether the rates charges are reasonable. This Court is not required to make the case *for* plaintiff's counsel.

Finally, as to costs (which plaintiff is entitled to recover under the contract provision cited above), the Court will award only part of what has been requested.

Title 28 U.S.C. § 1920 provides that the following may be taxed as costs:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Plaintiff requests a total of $7,650.77 in costs, including "costs and expenses associated with filing the Complaint; document reproduction; travel for out-of-state depositions; and court reporting services for depositions; preparation and reproduction of trial exhibits; expert witness costs; postage and delivery costs; and online research charges." (Schomer Aff. ¶11; *see also* Doc. No. 89-3.) The receipts attached to the modified fee petition in support of costs are at least partially indecipherable due to the poor quality of the duplication. The Court's own summation of the costs based on those receipts falls short of the amount sought by plaintiff. In

13

addition, the Court concludes that, since the appeal was voluntarily dismissed by HMSA, the costs of trial transcripts and the Court of Appeals filing fee are not taxable to defendant. Therefore, the following costs will be granted:

| | |
|---|---|
| Expert fee: | $ 600.00 |
| Travel/Food expenses: | $2,324.98 |
| Deposition Transcripts: | $1,395.70 |
| Reproduction costs: | $1,239.18 |
| District Court filing fee: | $ 350.00 |
| | |
| TOTAL: | $5,909.86 |

## III. CONCLUSION

For the reasons set forth in the Memorandum Opinion and Order of November 14, 2013, and the instant Order, plaintiff's modified petition for attorney's fees and costs (Doc. No. 89) is **GRANTED** in part. The Court awards plaintiff, against defendant, fees in the amount of $40,735.50 and costs in the amount of $5,909.86, for a total award of $46,645.36.

**IT IS SO ORDERED**.

Dated: March 28, 2014

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**